# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## KELLY'S EX'OR v. TALIAFERRO AND ALS.

### JANUARY 20th, 1887.

### Absent, LEWIS, P.

ENDORSERS—*Collateral security—Exoneration—Case at bar.*—Firm indebted to bank, latter consented to extend time on firm's giving negotiable notes for the debt, endorsed by K. and T., and getting latter to confess judgment for the aggregate as collateral security— K. did, but T. did not confess such judgment. Bank, informed of T.'s failure, promised to get judgment against T., but did not. The notes not being wholly paid, and K.'s estate being required to pay his judgment to the extent of the deficiency, K.'s executor insisted that bank should lose half of said deficiency on account of its laches in failing to get judgment against T.—

HELD :

> Under the agreement it was firm's duty to get both K. and T. to confess judgment. Bank's promise to obtain judgment against T. was *nudum pactum*, and not binding. K.'s estate has no claim to be exonerated as to one-half of the deficiency.

Appeal from decree of circuit court of Fauquier county, rendered December 21st, 1883, in the cause of Kelley's executor against Taliaferro and others. The decree being adverse to the complainant, he obtained an appeal and *supersedeas*.

Opinion states the case.

*J. G. & W. W. Field,* and *A. D. Payne,* for the appellant.

*Brooke & Scott,* for the appellees.

HINTON, J., delivered the opinion of the court.

The only question we deem it necessary to consider in this case is, whether the estate of John P. Kelly, deceased, owes upon the judgment confessed in his lifetime, to the Merchants National Bank, of Baltimore, Maryland, the sum of $5,017.01, fixed by the decree complained of, or one-half of that sum, that being the amount reported by the commissioner as due, or nothing at all, as the appellant contends. And this is purely a question of fact which depends upon two other questions of fact: first, what was the agreement between the firm of Kelly, Tackett & Ford and the bank which brought about the confession of judgment by the said John P. Kelly; and, second, whether a certain debt due from A. D. Kelly & Co., of New Orleans, to Kelly, Tackett & Ford was ever transferred to the said bank.

It is argued for the appellant that upon the failure of the firm of Kelly, Tackett & Ford, an arrangement was entered into between the bank, the said firm, and John P. Kelly and Thoroughgood Taylor, the endorsers of said firm, the result of which was that Kelly, Tackett & Ford were to draw their three negotiable notes, payable to the Merchants National Bank of Baltimore for $6,333.33⅓ each, dated April 2, 1869, and payable respectively in three, four and five years, interest to be paid semiannually, until the maturity of the notes, by the drawers, and that these notes were to be endorsed by the said John P. Kelly and Thoroughgood Taylor, and delivered to the said bank, and that as collateral security for these notes the said Kelly and Taylor were to confess each a judgment for $19,000; which judgments were to stand as security for the notes, but not to be enforced until the maturity of the notes and default made in their payment. That as further collateral security, the said firm assigned to the bank certain notes of G. B. Stacy & Son,

the amount of which it is not material to state, and the debt due by A. D. Kelly & Co. to the said firm, then in litigation and amounting nearly to $7,000. That the bank agreed to accept these assignments, collect the sums due, and apply all such collection to the discharge of the three negotiable notes endorsed by Kelly and Taylor, and when these notes were discharged to pay over to said John P. Kelly and Thoroughgood Taylor whatever balance might remain. In other words, it is insisted that the bank accepted these assignments as a trustee for the benefit of Kelly and Taylor, the endorsers, and it is contended that the failure of the bank to obtain a judgment against Thoroughgood Taylor, one of the joint endorsers, either by confession or by suit, was such negligence and laches on the part of the bank as should induce a court of equity to refuse its aid to enforce to any extent the judgment against John P. Kelly, or that at least to the extent of one-half of the amount decreed, the loss should fall upon the bank, by whose negligence it had been brought about.

But this contention cannot be sustained; for while it appears from the record that in April, 1869, the firm of Kelly, Tackett & Ford being then indebted in the sum of $19,000, for which John P. Kelly and Thoroughgood Taylor were already bound as endorsers, did execute to the bank their three notes for the sum of $6,333.33⅓ each, and gave as endorsers upon the said notes the said John P. Kelly and Thoroughgood Taylor, and obtained from the said John P. Kelly a confession of judgment in favor of the bank for that amount.

It also very clearly appears that this was really the contract of Kelly, Tackett & Ford with the bank, and that while any surplus that might be in the hands of the bank after the payment of the judgments, which, by the terms of the agreement, Kelly, Tackett & Ford were to procure from both John P.

Kelly and Thoroughgood Taylor, was to be used to secure the said endorsers, yet, that the primary object of the whole arrangement was to satisfy the bank by the deposit of collaterals and the confession of judgment, which they expected to procure, and so induce the bank to extend the time within which the debt of $19,000 then due might be paid, and it was clearly contemplated that the payment of the three notes for $6,333.33⅓ were to operate as an extinguishment of those judgments.

The bank was entitled, under the agreement, to a confession of judgment from both Taylor and Kelly, which was to be procured by Kelly, Tackett & Ford, and a failure on the part of this firm to obtain a confession from Taylor cannot operate in any way to invalidate or affect the judgment confessed by Kelly. He confessed that judgment, doubtless, relying upon the understanding derived from Kelly, Tackett & Ford that they would procure a like confession from Taylor, but the failure of this firm to do so cannot affect the bank.

The subsequent promise of the bank to bring suit against Taylor was *nudum pactum*, and certainly could not impose upon the bank an obligation to do an impossible thing, namely, to compel Thoroughgood Taylor to confess a judgment, nor upon a failure to sue, to deprive it of rights fairly acquired by the confession of judgment of John P. Kelly.

Upon the second point, it seems very clear, from the evidence in the record, that the debt due by A. D. Kelly & Co., although it was at one time contemplated that it should be done so, was never transferred to the bank, but that it was collected by the firm of Lea, Finney & Miller, attorneys for Kelly, Tackett & Ford, in the city of New Orleans, and by them disposed of under the orders and for the benefit of Kelly, Tackett & Ford.

Under all the circumstances, therefore, there being no error in the calculations ascertaining the amount to which the bank is entitled, we think the decree of the circuit court of Fauquier appealed from is right, and must be affirmed.

DECREE AFFIRMED.